## WILSON H. COLE

### *vs.*

## NORTH BRITISH MERCANTILE INSURANCE COMPANY.

## WILSON H. COLE

### *vs.*

## NORWICH UNION FIRE INSURANCE SOCIETY, LIMITED.

Aroostook.     Opinion August 20, 1915.

*Burden.    Fraudulent Statements as to Quantity.    Insurance.    Policy. Proof of Loss.*

1. To avoid liability on a fire insurance policy on the ground of untrue statements in the proof of loss, it must be shown that the statements were knowingly and intentionally untrue, and the burden of showing it is on the defendant company.

2. The evidence warranted the jury in finding that the plaintiff's proof of loss was not fraudulently made.

3. It is not clearly shown that the verdict was excessive.

On motions for new trials.    Motions overruled.

Two cases on insurance policies by the plaintiff, one against the North British Mercantile Insurance Company and the other against the Norwich Union Fire Insurance Society, to recover for potatoes which were destroyed by fire.    The plea in both cases was the general issue, with brief statements.    The jury returned verdict for plaintiff against the North British Mercantile Insurance Company for $1951.85 and against the Norwich Union Fire Insurance Society for $975.93. The defendant in each case filed a motion for new trial.

The case is stated in the opinion.

*Madigan & Pierce*, for plaintiff.

*Hersey & Barnes*, for defendant.

SITTING:  SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J.   These two cases, which are actions upon fire insurance policies, relate to the same fire loss, and were tried together. In each, the plaintiff recovered a verdict, and the cases come before this court on motions for new trials.   The execution of the policies, October 2, 1913, the destruction by fire, February 22, 1914, the filing of proofs of loss, the offer to arbitrate damages and the refusal on the part of the defendants are all admitted.   The property insured consisted chiefly of potatoes in the plaintiff's potato house at Belvedere Siding in the town of Crystal.   In his proofs of loss, the plaintiff stated that the potatoes in the potato house at the time of the fire amounted to 6928 barrels.   The defendants pleaded, and now contend, that the plaintiff in his proofs of loss made a false and fraudulent statement of the amount of his loss, in that he wilfully and falsely stated the quantity of potatoes which were in the potato house at the time of the fire, and which were destroyed, to be largely in excess of the quantity of potatoes actually there.

The proofs of loss, which are alike in the two cases, appear to have been prepared by some insurance agent or adjuster, after an examination of the plaintiff's books and other papers.   But they were signed and sworn to by the plaintiff, and with one exception to be noted hereafter they undoubtedly state his claim correctly.   In the proofs, the amount of potatoes in the potato house at the time of the fire was arrived at mathematically in the following form:—

"Potatoes put into warehouse as per assured's books
    inspected and checked in detail,                     12,485 bbls.
Less potatoes sold, as per books and shipping
    receipts verified,                                    5,192 bbls.
                                                          ───────────
                                                          7,293 bbls.
Less shrinkage as agreed,                                   365 bbls.
                                                          ───────────
Potatoes in warehouse at time of fire,               6,928 bbls."

It is now claimed by the plaintiff, and not disputed by the defendant, that the item of "5192 bbls" potatoes sold, included 300 barrels which were shipped by the plaintiff in his own name, but which belonged to another party, and were never in the potato house. The correction of this error would decrease the quantity sold to 4892 barrels, and increase the quantity of potatoes left in the potato house to 7228 barrels.

The law of the case may be briefly stated. If the plaintiff knowingly and intentionally stated in his proofs of loss a larger amount of potatoes than he knew, or had reason to believe, were in the potato house at the time of the fire, it was a fraudulent statement, and avoided the policies. If, on the other hand, he erroneously stated a larger amount of potatoes than were actually there, and the error was honestly made by reason of misinformation, or mistake in judgment or memory, the policies were not avoided thereby, and the defendants are liable for the actual loss. To avoid the policies it must be shown that the statements in the proofs of loss were knowingly and intentionally untrue. *Linscott* v. *Orient Insurance Co.*, 88 Maine, 497; *Atherton* v. *British America Assurance Co.*, 91 Maine, 289; *Hilton* v. *Phoenix Assurance Co.*, 92 Maine, 272. And the burden of proving fraud is on the party that asserts it. *International Harvester Co.* v. *Fleming*, 109 Maine, 104.

The substantial correctness of the statement in the proofs of loss, as to quantity of potatoes in the house at the time of fire, depends upon the correctness of three factors. First, the total amount put into the storehouse, which includes some loaded from the cart directly to the car, through the house, but not stored; secondly, the allowance for shrinkage; and lastly, the total quantity sold and shipped, or otherwise removed, which also includes the potatoes loaded from

cart to car. As to the last factor there is no dispute. The station agent testified that 13,167 bushels, or 4788 barrels,—allowing two and three quarters bushels to the barrel,—had been shipped. In addition to this 65 barrels had been sold, and 40 others had been removed, making a total of 4893 barrels. All this is admitted. The second item states the shrinkage "as agreed," but it does not appear that it was agreed to by anyone representing these defendants. As to them, it must be regarded merely as an estimate. The estimate may not have been large enough. But it must have been understood by them to be an expression of opinion, in regard to a matter of judgment. And under the circumstances we think a jury would be warranted in finding that the statement, though perhaps erroneous, was not fraudulently made.

In support of the first element in the computation, the plaintiff introduced evidence which tended to show that he planted over 70 acres of land with potatoes, that he raised thereon 6410 barrels of merchantable potatoes which were put into the potato house, that the count was kept by his foreman in the field, and by his son at the potato house, and that the counts were compared from time to time and found to be substantially alike. It is in evidence that these counts were reported by the men to the plaintiff who entered them on his books, but it does not appear that the plaintiff had any personal knowledge of the count, nor that he had any knowledge, except as the count was reported to him. There is testimony which seems to be credible that the plaintiff bought during the season 6099 barrels of potatoes, and that these were put into the potato house; or, if some were loaded from cart to car, allowance is made for them in the item of "potatoes sold."

The plaintiff's claim then is that he put into the house, of potatoes raised and bought, 12509 barrels, that he had sold and shipped or removed 4893 barrels, and that there were left at the time of the fire 7616 barrels, less shrinkage. And by shrinkage in this case is meant for the most part the loss by "culls," decayed or worthless potatoes. And the shrinkage was variously estimated by witnesses at from 4% to as high as 10%, the former estimate being that of the plaintiff's witnesses, and the latter that of the defendants'. It also appears that there were some "seconds" which were merchantable potatoes, but salable, as the evidence shows, at about 20 cents a barrel less than first class ones. The estimates as to quantity of "seconds" is

conflicting.   The plaintiff testified that he included "seconds" in his estimate of the 4% for shrinkage.

The defendants make two contentions.   One is that taking into account the capacity of the bins in the house, and the testimony respecting their condition as to fullness just before the fire it is manifest that not more than about 5500 barrels were burned.   The other is that it is capable of mathematical demonstration that the house could not contain the number of barrels that the plaintiff says he put in it.   And the defendants say further as to both of these contentions that the plaintiff, as an old and experienced dealer in potatoes, had no reason to believe that his statement was true; in fact, that he must have known it to be untrue.

The plaintiff's potato house measured on the inside 38 by 78 feet. The height from floor to floor above is in dispute, but there is evidence which a jury might reasonably believe that it was fifteen feet.   The house was partitioned into bins, three across each end, and three longer ones between, running lengthwise of the house.   Between the long bins and the smaller ones at each end was a walk across the building.   The dimensions of the bins is not given, but, of course, their cubical capacity was larger or smaller, according to the width of the walks.   And that width is in dispute, the estimates varying from 8 to 11 feet.   The plaintiff claims that the house at the end of the digging season was filled full, bins, walks and all, bulkheads having been built across the ends of the walks.   He also offered evidence tending to show that 400 barrels of potatoes in barrels were placed on the upper floor over the bins, when the bins and walks were full, and that afterwards, as potatoes were shipped away from below, these barrels were emptied onto the piles.   But at the time of the fire, what remained were practically all in the bins.   And some had been taken out of the bins.   The solution of the present question then depends upon the size of the bins, not definitely proved, and upon their condition of fullness, concerning which there is a conflict of testimony.   Besides there is no evidence of what are the cubical contents of a barrel of potatoes by measure.   There is evidence of the contents when 60 pounds are taken for a bushel, but it is not shown that the contents are the same in both cases.   One piece of evidence in the case is that of a witness who stored at one time, as he says, 600 barrels in one of the smaller bins.   The witnesses generally called the center bins double ones, but no measurements were shown.

Whether they were exactly double no one appears to know.   Here is an element of uncertainty.   There are no certain means of verification.   But there is one test of bin capacity, more or less satisfactory, that can be applied.   An expert witness called by the defendant testified that the government method of measuring potatoes for customs purposes is to call one cubic foot equal to sixty-seven one hundredths of a bushel of sixty pounds.   He computed by this method that the plaintiff's entire house, up to a point 12⅔ feet from the floor, deducting for bulkheads and passage way, but including walks, would contain 8676 barrels.   If we assume that the bins were 14 feet high and that the walks between were each 8 feet wide, both of which assumptions the jury were warranted in making, and if we make deductions for the walks, bulkheads and passage way, a computation by the same method shows a bin capacity of 8008 barrels.   From this a proper allowance is to be made for shrinkage and potatoes taken out.   In view of the contradictory state of the evidence upon both of these matters we do not think it is satisfactorily shown that the plaintiff's statement that there were 6928 barrels in the house, mostly in bins, or 7228 barrels if we include the 300 deducted in the proof by mistake, should be regarded as wilfully and intentionally false, so far as the discussion has now proceeded.

But the defendants attack the foundation of the plaintiff's claim by asserting that it would be a physical impossibility for the plaintiff to put so many potatoes into the house as he says he did.   They assume that at the end of October, 1913, the house was full of potatoes, and that the capacity of the house without any deductions computed, according to the method already referred to, could not have exceeded 9147 barrels.   In this computation the available height of room was called 12⅔ feet.   From this is to be deducted 471 barrels for space occupied by bulkheads and passage way, leaving an available total of 8676 barrels.   It is admitted that after October and before the fire there were shipped away or removed 2479 barrels. Deducting those shipped or removed from the total capacity 6197 barrels would be left.   The defendants claim also that shrinkage should be deducted.   But since this computation goes only to the capacity of the house, shrinkage by culls or defective potatoes is not to be considered.   Now if we assume, as before, that the available height of the room was 14 feet, instead of 12⅔, the total capacity of the house, less space for bulkheads and passage way, was 9637 barrels.

If we deduct the 2479 barrels shipped, we have left 7158 barrels. This is approximately the quantity claimed by the plaintiff. In both computations, the 400 barrels stored in barrels on the second floor may properly be added. If we add to the 9637 barrels, the number which appear to have been shipped before October, and while potatoes were still being put into the house, the amount is over 12,000 barrels, which might be in the house at one time. This is not as many as the plaintiff says he raised and bought. But as the evidence for the plaintiff tends to show that, if the distance from floor to floor was 15 feet, the potatoes for a time were piled higher even than 14 feet, we cannot say from the evidence that the capacity of the house has been overstated.

Perhaps the two most important questions of fact are those relating to the height of the bins, and those relating to the height to which the potatoes were piled in the bins. Both are in dispute. We are not convinced that the jury decided either question erroneously. If the facts were as claimed by the plaintiff the verdicts are sustainable. There is certainly enough in the case to warrant the jury in finding that there was no fraud in making the proof of loss, even if there was error. And if there was error in the amount of the verdict it has not been so clearly shown as to warrant our interference.

The certificate in each case will be,

*Motion for a new trial overruled.*